**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

STEPHANIE A.,[1]
    Plaintiff,

        v.                                  Civil No. 3:22-cv-00414-DJN

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Plaintiff was forty-eight years old at the time of her benefits applications and has past relevant work history as a grocery store clerk. (R. at 307, 338.) Plaintiff alleges she is unable to work due to chronic obstructive pulmonary disease ("COPD"), pre-diabetes, depression, asthma, anxiety, and obesity. (R. at 79-80, 83, 328.)

On September 22, 2021, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act and denied her applications for benefits. (R. at 13-15.) After exhausting her administrative remedies, Plaintiff seeks review of the ALJ's decision. This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed the issues, which has rendered the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on October 8, 2019 and June 26, 2019, respectively, with an alleged onset date of December 6, 2018. (R. at 16, 77, 307.) The SSA initially denied these claims on April 24, 2020, and again upon reconsideration on June 26, 2020. (R. at 123, 130, 137, 141, 144, 148.) At Plaintiff's written request, the ALJ held a hearing on September 8, 2021, where Plaintiff appeared with counsel and testified along with a vocational expert. (R. at 34-58, 151.) On September 22, 2021, the ALJ issued a written opinion, denying Plaintiff's claim for benefits. (R. at 16-27.) On April 4, 2022, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).[3]

## II. STANDARD OF REVIEW

### A.     The Substantial Evidence Standard

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual

---

Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

### B.      The Five-Step Evaluation

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the

3

claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 18-26.) At step one, the ALJ noted that Plaintiff did not engage in substantial gainful activity during the relevant period. (R. at 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: COPD, asthma, and obesity. (R. at 19.) The ALJ decided at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (R. at 20.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity,[4]

---

[4] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule),

finding that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b)[5] with the following limitations:

> [S]he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can stoop, kneel, crouch, and crawl. She must avoid all exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, or hazards. She can perform jobs that do not require production-rate pace (meaning, fast pace).

(R. at 21.) The ALJ made this finding after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 21.)

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a grocery checker, as "[t]his work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity." (R. at 25) (citations omitted.). Although not required, the ALJ continued her analysis to step five, where she found that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 25.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of cashier, merchandise marker, and routing clerk. (R. at 25-26.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 26.)

---

and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.*

[5] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

## IV. ANALYSIS

Plaintiff alleges two issues necessitate remand. (Pl.'s Mem. Supp. Summ. J. at 3, 12, ECF No. 19 ("Pl.'s Mem.").) First, Plaintiff contends the ALJ erred by failing to account for her mild mental limitations in the residual functional capacity. (Pl.'s Mem. at 3-11.) Second, she argues the ALJ's decision is void pursuant to the Appointments Clause of the United States Constitution. (Pl.'s Mem. at 12-13). Specifically, Plaintiff avers that Acting Commissioner Nancy Berryhill ("Ms. Berryhill") violated the Federal Vacancies Reform Act ("FVRA") by serving as Acting Commissioner beyond the prescribed 210-day period, and, as a result, "[h]er actions after that date had no legal validity." (Pl.'s Mem. at 12.) Thus, Ms. Berryhill's appointment of the ALJ who rendered the decision in this case was "unlawful" and the case "must be remanded to a new properly appointed ALJ for a *de novo* hearing and decision." (Pl.'s Mem. at 12-13) (emphasis in original.)

Defendant responds that the ALJ's decision should be affirmed because the ALJ was not obligated to include further functional restrictions in the residual functional capacity to account for Plaintiff's mild mental limitations, and substantial evidence supports the ALJ's residual functional capacity findings.  (Def.'s Mem. Supp. Summ. J. at 13-18, ECF No. 20 ("Def.'s Mem.").) Further, Defendant contends that the plain language of the FVRA granted Ms. Berryhill the legal authority to serve as Acting Commissioner at the time she appointed the ALJ who rendered the decision in this case. (Def.'s Mem. at 20-21.) Accordingly, the ALJ's decision is not void for violating the Appointments Clause. (Def.'s Mem. at 21-22.) For the reasons that follow,

the Court finds that the ALJ did not err in her residual functional capacity analysis, and that Ms. Berryhill had the legal authority to appoint the ALJ in this case.

### A. The ALJ Was Not Required to Incorporate Plaintiff's Mild Limitations in the Residual Functional Capacity.

Plaintiff first claims the ALJ erred by not incorporating her mild mental limitations and failing to "explain why she was not adopting the mental functional limitations she already found credible in her [residual functional capacity]." (Pl.'s Mem. at 5.) She contends the ALJ "adopted absolutely no mental limitations in her [residual functional capacity]" and that all credible limitations "must be incorporated" into the residual functional capacity or, alternatively, the ALJ must explain "why such credible limitations were not accommodated." (Pl.'s Mem. at 5.) According to Plaintiff, this alleged error is not harmless because the ALJ's "failure, without explanation, to account in some way in the [residual functional capacity] for mild [psychiatric review technique] findings when the denial of benefits is premised upon an ability to perform more than unskilled work is legal error." (Pl.'s Mem. at 6.)

Defendant responds that "the ALJ's finding of 'mild' limitations at Step 2 does not require the ALJ to include mental limitations in her [residual functional capacity]." (Def.'s Mem. at 10-11.) Defendant cites to case law from the Fourth Circuit and its district courts that she argues is dispositive and adds that the ALJ adequately provided a "'more detailed' assessment" of Plaintiff's mental health limitations by citing to the medical experts' findings as well as "Plaintiff's ability to manage her activities of daily living independently, including preparing meals, managing money, shopping, and driving." (Def.'s Mem. at 11-13.)

In her Reply Memorandum, Plaintiff asserts that SSA regulations require the ALJ to "articulate the basis for h[er] findings with respect to a claimant's mental limitations" and that "an ALJ cannot simply ignore limitations she found credible at earlier steps of the evaluation process."

7

(Pl.'s Reply Mem. at 2-3, ECF No. 21 ("Pl.'s Reply").) She adds that Defendant's "reliance on the findings" in Defendant's cited cases from the Eastern District of Virginia is "misguided" because those cases, unlike the present case, involved medical opinion evidence establishing "that the respective claimant's mild mental limitations were not necessary for inclusion in the [residual functional capacity]." (Pl.'s Reply at 4-5.) Here, however, Plaintiff argues that the state agency physicians found Plaintiff's mental impairments to be severe, and the ALJ found these opinions persuasive. (Pl.'s Reply at 4-5.) Accordingly, Plaintiff avers that the ALJ should have incorporated her mild mental limitations into the residual functional capacity. (Pl.'s Reply at 4-5.) For the reasons set forth below, the Court finds the ALJ was not required to incorporate Plaintiff's mild mental limitations into the residual functional capacity, nor was she required to explain their omission.

1. *The ALJ Did Not Err by Failing to Incorporate or Explain Why She Did Not Incorporate Plaintiff's Mild Mental Limitations in the Residual Functional Capacity.*

In addition to the five-step analysis discussed above and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework at each level of administrative review. *Id.* §§ 404.1520a(a), 416.920a(a). This technique first requires the determination of whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) "understand, remember, or apply information"; (2)

"interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the four areas is rated "none" or "mild,"[6] then the ALJ generally will conclude that the claimant's mental impairment is not "severe," "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). The reviewing authority will then assess the claimant's residual functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)); *see Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659, 662 (4th Cir. 2017).

In her decision, the ALJ completed the psychiatric review technique in accordance with the regulations and determined that Plaintiff had only mild limitations in all four functional areas. (R. at 19-20.) First, in the area of understanding, remembering, or applying information, the ALJ found that Plaintiff needed "no special reminders to take care of her personal needs and grooming, or to take her medicine, but that she sometimes needs to write notes for herself to remember a doctor's appointment or needed [sic] groceries." (R. at 19.) The ALJ cited to the objective evidence that showed mostly normal examination findings, including full orientation, fluent speech, good insight, and normal thought content. (R. at 19.) In interacting with others, the ALJ noted that Plaintiff "talks on the phone with her sisters and daughter, and that her sisters sometimes come

---

[6] The Social Security regulations define a "mild limitation" as a "slightly limited" ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(b).

9

over to visit." (R. at 19.) Plaintiff "reported she had no problems getting along with others, although she does not go out very often." (R. at 19.) The ALJ noted that, on examination, Plaintiff "demonstrated an appropriate mood and affect, as well as normal behavior." (R. at 19.)

In the area of concentrating, persisting, and maintaining pace, the ALJ noted that Plaintiff drives, though not often, and "does not need help or encouragement to do her housework." (R. at 20.) Plaintiff testified that she could count change, as well as "pay attention for about 10 minutes and follow written instructions, but that she forgets spoken instructions and needs them repeated." (R. at 20.) Although Plaintiff "reported difficulty concentrating on things[,]" she "was able to follow commands" and "follow along with the hearing proceedings and answer questions appropriately." (R. at 20.)

Finally, in the area of adapting or managing oneself, the ALJ explained that Plaintiff testified being able to perform "some household chores with breaks, prepare meals, and help her son with his school work. However, she reported her daughter helps with cooking" as well as grocery shopping. (R. at 20.) The ALJ noted that Plaintiff had "no problems with performing her personal care tasks, and that she can handle changes in routine." (R. at 20.) The ALJ then concluded that Plaintiff's "medically determinable mental impairment cause[d] no more than a 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities . . . ." (R. at 20) (emphasis in original). Consequently, the ALJ found Plaintiff's mental impairments to be non-severe. (R. at 20.)

In challenging the ALJ's decision, Plaintiff does not contend that the ALJ should have assigned greater restrictions to any of these functional categories but asserts that the ALJ was nonetheless obligated to provide for these functional limitations in the residual functional capacity.

(Pl.'s Mem. at 4.) To support her argument, Plaintiff cites to case law from outside the Fourth Circuit as persuasive authority that mild mental limitations must be accounted for in the residual functional capacity when the claimant is found to be capable of performing "more than unskilled work . . . ." (Pl.'s Mem. at 6-7) (collecting cases.) She surmises that the Tenth Circuit's decision in *Wells v. Colvin*, 727 F.3d 1061, 1068-71 (10th Cir. 2013), which stands for this proposition, must be "in conformity with Agency policy" simply because the SSA has not "issue[d] an Acquiescence Ruling disagreeing with" the Tenth Circuit's reasoning. (Pl.'s Mem. at 7, citing SSR 96-1p, 1996 WL 374182).

As to the latter point, the *absence* of a SSA Acquiescence Ruling on a Circuit Court of Appeals decision deemed in conflict with the SSA's interpretation of the Act or its regulations does not bind an ALJ to follow the law of the conflicting circuit when adjudicating claims arising outside of that circuit. When the SSA determines a ruling by a United States Court of Appeals conflicts with its interpretation of the Act, it issues an Acquiescence Ruling describing the court decision, identifying the issues involved, and explaining how the SSA will "apply the [court's] holding to claims at all levels of the administrative review process *within the applicable circuit*." 20 C.F.R. § 404.985(a) (emphasis added.) Thus, the regulations require that the SSA apply a Circuit Court of Appeals decision which the SSA has determined to be in conflict with the SSA's interpretation of the Act or regulations to claims within that circuit, unless the Commissioner seeks further review of the decision or relitigates the issue presented in the decision. 20 C.F.R. §§ 404.985(a); 416.1485(a). Unless and until a Social Security Acquiescence Ruling is issued determining that a final circuit court holding conflicts with the Agency's interpretation of the Act or regulations and explaining how SSA will apply such a holding, SSA decisionmakers continue to be bound by the SSA's nationwide policy, rather than the court's holding, in adjudicating other

11

claims within that circuit court's jurisdiction. SSR 96-1p, 1996 SSR LEXIS 8 (61 Fed Reg 34470 (July 2, 1996)).

Here, Plaintiff's claim arose in the Fourth Circuit, and was heard by an ALJ who, under the acquiescence rules cited above, certainly had no reason to reach outside her locale and apply Tenth Circuit law. It would have been improper for her to do so. Accordingly, this Court will review the ALJ's decision to determine if the ALJ properly evaluated Plaintiff's claims under the standards articulated by Fourth Circuit. In doing so, the undersigned finds that case law from the Fourth Circuit and the Eastern District of Virginia do not support Plaintiff's contentions that the ALJ should have accounted for her mild mental limitations in the residual functional capacity or explained the reason for their absence therefrom. *See e.g., Mascio*, 780 F.3d at 638; *Kimberly G. v. Comm'r of Soc. Sec.*, Civil Action No. 2:21-cv-45, 2021 U.S. Dist. LEXIS 255364, at *31 (E.D. Va. Dec. 7, 2021) (collecting cases).

Indeed, the *Mascio* Court "indicated that *moderate*—not mild—limitations must be either accounted for in the [residual functional capacity] or alternatively explained." *Kimberly G.*, 2021 U.S. Dist. LEXIS 255364, at *31 (citing *Mascio*, 780 F.3d at 638) (emphasis in original). In the Eastern District of Virginia, courts have routinely declined to extend this requirement to mild limitations. *See, e.g., Camille B. v. Kijakazi*, No. 20-cv-262, 2021 U.S. Dist. LEXIS 176667, at *13 (E.D. Va. Sept. 15, 2021); *Eva L. v. Saul*, No. 20-cv-0162, 2020 U.S. Dist. LEXIS 173652, at *64 (E.D. Va. Sept. 22, 2020); *Younger v. Berryhill*, No. 18-cv-182, 2019 U.S. Dist. LEXIS 126935, at *13 (E.D. Va. June 21, 2019) ("*Mascio* did not provide that remand was required when the ALJ failed to give an explanation in the presence of mild limitations only."), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 126956, 2019 WL 3451305 (E.D. Va. July 29, 2019). The court in *Younger v. Berryhill* declined to extend *Mascio*'s holding to mild limitations

and rejected the "merely persuasive authority" that extended the requirement in other districts. 2019 U.S. Dist. LEXIS 126935, at *13 n.5. Although the *Younger* Court noted that "district courts within the Fourth Circuit appear divided as to whether an extension of *Mascio*'s holding to address mild limitations is appropriate," it held that "such an extension is not an appropriate finding this Court should make." *Id.* at *14.

Although Plaintiff highlights the *Younger* Court's generalization of Fourth Circuit case law to argue that the issue is far from settled, a cursory glance at the case law in the Eastern District of Virginia indicates a greater consensus. Indeed, in the years since *Younger*, courts within the Eastern District of Virginia, such as *Kimberly G. v. Commissioner of the Social Security Administration*, declined to extend the *Mascio* requirement, explaining the Fourth Circuit's aversion for "categorical rules" in social security appeals and "recognizing that even *Mascio* allowed an ALJ to alternatively explain why a [residual functional capacity] did not account for a moderate limitation." *Kimberly G.*, 2021 U.S. Dist. LEXIS 255364 at *32 (citing *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020)). Indeed, "[r]ecommending that an ALJ categorically incorporate all mild limitations would infringe on the ALJ's ability to weigh the evidence and exercise discretion." *Id.*

Similarly, in *Camille B. v. Kijakazi*, this Court was again presented with a claimant-plaintiff's argument that "an ALJ must always include all limitations she finds credible in her [residual functional capacity]", but unambiguously ruled that "[t]his is incorrect." 2021 U.S. Dist. LEXIS 176667 at * 13. Like *Kimberly G.*, the *Camille B.* Court reasoned that the Fourth Circuit "qualified *Mascio* in *Shinaberry v. Saul*, stating '[w]e did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the [residual functional capacity]. On the contrary we explained that an 'ALJ

can explain why [a claimant's] *moderate* limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's [residual functional capacity].'" 2021 U.S. Dist. LEXIS 176667 at *13 (citing 952 F.3d 113, 121 (4th Cir. 2020)) (quoting *Mascio*, 780 F.3d at 638) (emphasis added)).

Consistent with the above authority, the Court concludes that the ALJ was not required to incorporate Plaintiff's mild limitations in the residual functional capacity or explain in the alternative why she chose not to do so.

### 2. The ALJ Did Not Err in Her Step Four and Step Five Findings.

Next, Plaintiff argues that the ALJ's failure to include Plaintiff's mild limitations in the residual functional capacity caused the ALJ to err at step four when she found that Plaintiff could perform her past relevant work as a grocery checker. (Pl.'s Mem. at 7-8.) She reasons that "the occupation of grocery checker is semi-skilled, [and] it also has a high reasoning level" of three, which requires "high cognitive functioning" that is incompatible with her mild mental limitations. (Pl.'s Mem. at 8-9.)

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity with the physical and mental demands of the kind of work she has done in the past to determine whether the claimant has the residual functional capacity to do her past work. 20 C.F.R. § 404.1560(b). "[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if [s]he is capable of performing [her] past relevant work either as [s]he performed it in the past or as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207 (citing SSR 82-61). Plaintiff bears the burden of establishing her inability to work within the

meaning of the Act. *See Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir.1983). She must make a *prima facie* showing of disability by showing she is unable to return to her past relevant work. *Id.*

As discussed above, the ALJ assessed Plaintiff's residual functional capacity after she concluded that Plaintiff had "mild limitations" in the four areas of mental functioning and determined, as a result, that Plaintiff's mental impairments were non-severe. (R. at 20.) She then solicited information from the vocational expert to determine whether Plaintiff could perform her past relevant work. (R. at 54-55.) During the hearing, the vocational expert testified that Plaintiff's past work as a grocery checker was classified as "semiskilled." (R. at 53.) She then told the ALJ that an individual with Plaintiff's age, education, and work experience who was restricted to a limited range of light work could perform Plaintiff's past relevant work as a grocery checker as it was "generally performed and not as performed by [Plaintiff]." (R. at 54.) The vocational expert also identified "unskilled, light level" examples of alternative jobs a hypothetical individual with these characteristics would be able to perform. (R. at 54-55.) The vocational expert identified cashier (*Dictionary of Occupational Titles* ("DOT") # 211.462-010), merchandise marker (DOT #209.587-034), and routing clerk (DOT # 222.687-022). (R. at 54.) She added that all of those positions were assessed as a "SVP of 2 and are consistent with the DOT." (R. at 55.) When asked if such a hypothetical individual could perform any jobs with these same factors, but which "do not require production rate pace, meaning fast pace[,]" the vocational expert affirmed that these three sample occupations were "within those limitations." (R. at 55.) She added that her testimony was consistent with the DOT with the exception of her opinion "regarding whether or not it involve[d] production. That [was] based on experience and training and not addressed by the DOT." (R. at 55.)

In her supporting memorandum, Plaintiff maintains that the ALJ erred by not explaining how Plaintiff could perform semiskilled work given her mild mental limitations. (Pl.'s Mem. at 8.) However, the Eastern District of Virginia has previously found no error when an ALJ concluded that a claimant with mild limitations in the four areas of mental functioning could perform her past skilled work. *See Eva L. v. Saul*, No. 1:20-CV-0162 (JFA), 2020 U.S. Dist. LEXIS 173652, 2020 WL 5648324, at *14-18 (E.D. Va. Sept. 22, 2020). Another district court within the Fourth Circuit similarly held that the record showed "no basis to find that a 'mild limitation' in a claimant's ability to concentrate, persist, or maintain pace conflicts with the ability to perform skilled work." *Jackson v. Kijakazi*, No. 2:20-CV-03450-MGB, 2021 U.S. Dist. LEXIS 261895 at *23, 2021 WL 9594379 at *9 (D.S.C. Aug. 26, 2021). In this case, Plaintiff offers no argument as to how the record supports a finding that she is significantly limited in her mental abilities, such that she cannot perform her semiskilled work. Rather, Plaintiff merely asks this Court to speculate how her mild limitations in the mental functioning areas impact her ability to perform past, semiskilled work, on the basis that such work involves "a high reasoning level." (Pl.'s Mem. at 8.) Even assuming, *arguendo*, that a reasoning level of three out of six is "high," Plaintiff's argument amounts to no more than an invitation to this Court to re-weigh evidence that has already been considered and weighed by the ALJ. It is well-established that this Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. Absent any such showing by Plaintiff, there is no basis to find that Plaintiff's mild mental limitations conflict with her ability to perform skilled work.

Nonetheless, and in a similar vein, Plaintiff maintains that the ALJ further erred by identifying alternative jobs at step five that are listed in the DOT as requiring reasoning levels incompatible with Plaintiff's mental health limitations and residual functional capacity. (Pl.'s

Mem. at 8-9.) She also alleges that the merchandise marker and routing clerk positions are inconsistent with the ALJ's assessed residual functional capacity because both positions require production-rate pace. (Pl.'s Mem. at 9.) However, as discussed above, the vocational expert testified that these positions were consistent with the ALJ's assessed residual functional capacity, including the restriction to non-production rate pace, and noted that her opinion was "based on experience and training and not addressed by the DOT." (R. at 55.) As a result, the undersigned finds that the ALJ reasonably relied on the vocational expert's testimony, and that substantial evidence supports her step four and five findings.

### B. Ms. Berryhill Was Legally Serving as Acting Commissioner When She Ratified the ALJ's Appointment.

Plaintiff argues that the ALJ's decision is void because the SSA appointed the ALJ and Appeals Council members adjudicating Plaintiff's case in a manner that violated the Appointments Clause of the United States Constitution and the Federal Vacancies Reform Act ("FVRA").[7] (Pl.'s Mem. at 1, 12-13). Specifically, Plaintiff contends that former Acting Commissioner Nancy Berryhill appointed the ALJ and Appeals Council judges during a period which exceeded the statutorily prescribed 210-day acting term limit, when "she no longer had any legal authority as Acting Commissioner . . . to make such appointments." (Pl.'s Mem. at 12.). Plaintiff asks this Court to find that a "new ALJ must hold the new hearing" pursuant to the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044, 201 L. Ed. 2d 464 (2018). (Pl.'s Mem. at 14.)

---

[7] The FVRA authorizes certain officials to act during vacancies in Senate-confirmed offices. *See* 5 U.S.C. §§ 3345, 3346; *see also NLRB v. SW Gen., Inc.*, 580 U.S. 288, 137 S. Ct. 929, 934, 197 L. Ed. 2d 263 (2017).

### 1.  The Appointments Clause and the FVRA

The Appointments Clause prescribes "the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia,* 138 S. Ct. at 2049 (citing U.S. CONST. ART. II, §2, cl. 2 ("[B]ut the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.")). The Clause "distinguishes between two kinds of officers." *Seila Law LLC v. Consumer Fin. Prot. Bur.*, 140 S. Ct. 2183, 2199 n.3, 207 L. Ed. 2d 494 (2020). The first kind are "principal officers," who must be appointed by the President with the advice and consent of the Senate. *Id.* The second consists of "inferior officers," who can also be appointed by the President with the advice and consent of the Senate, but "whose appointment Congress may vest in the President, courts, or heads of Departments." *Seila Law LLC*, 140 S. Ct. at 2199 n.3; *see also Edmond v. United States*, 520 U.S. 651, 659, 117 S. Ct. 1573, 137 L. Ed. 2d 917 (1997); *United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020).

The Supreme Court noted that Congress has tried to address the problem that arises when the principal officer appointment process stalls, either due to the President's delay in selecting a nominee to fill the office, or the Senate's inability or unwillingness to confirm the nominee in a timely manner. *See SW General, Inc.*, 137 S. Ct. at 935. Indeed, Congress elected to give "the President limited authority to appoint acting officials to temporarily perform the functions of a vacant [principal officer] office without first obtaining Senate approval." *Id.* Thus, the Vacancies Act of 1868 provided a vehicle for the President to temporarily fill such offices with acting officers. *Id.* at 935-36. However, Congress later became concerned when an increasing percentage of these offices were occupied by temporary appointments beyond the time limitations established by the

Vacancies Act. *Id.* at 936. Subsequently, Congress replaced the Vacancies Act with the FVRA in 1998. *Id.*

Section 3346(a) of the FVRA sets forth who can act as an agency head and limits how long "a person serving as an acting officer as described under section 3345 may serve in the [vacant] office[.]" 5 U.S.C. § 3346(a). It specifies that an acting officer may execute the duties of the vacant office:

> "(1) for no longer than 210 days beginning on the date the vacancy occurs; or
>
> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate."

*Id.* Thus, when the President nominates a candidate, an acting principal officer appointment may last longer than the 210-day limit because the person serving as an acting department head may continue serving while the nomination is pending. *Id.* § 3346(a)(2). Indeed, the 210-day extension of acting service applies if the President withdraws the nomination, the Senate rejects the nominee, or the Senate fails to act altogether and the nomination is returned. *Id.* § 3346(b)(1). Moreover, this extension applies if the President thereafter makes a second unsuccessful nomination. *Id.* § 3346(b)(2).

### 2. *Nancy Berryhill's Tenure as Acting Commissioner*

Ms. Berryhill began serving as Acting Commissioner of the SSA on January 21, 2017, following Deputy Commissioner Carolyn Colvin's resignation as Acting Commissioner on January 20, 2017. *See Memorandum Providing an Order of Succession Within the Social Security Administration,* 81 Fed. Reg. 96337, 2016 WL 7487744 (Dec. 23, 2016) (detailing the order of succession by which the highest-ranking official in the SSA ascends to the Acting Commissioner

19

role). In March 2018, the Government Accountability Office ("GAO") concluded that Ms. Berryhill's period of valid service as Acting Commissioner under the FVRA expired on November 16, 2017. *See* U.S. Government Accountability Office, *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 -- Commissioner, Social Security Administration*, p.2 (Mar. 6, 2018), https://www.gao.gov/products/D18772#mt=e-report, B-329853 (last visited March 14, 2023). The GAO concluded that Ms. Berryhill's acting service between November 16, 2017 and March 6, 2018 violated the FVRA because then-President Donald Trump failed to nominate anyone to serve as Commissioner of the SSA between his inauguration and November 16, 2017. *Id.*

Following the GAO's violation notice, Ms. Berryhill stepped down as Acting Commissioner, but presumably continued to perform the Commissioner's delegable functions and duties. Anne Joseph O'Connell, *Actings*, 120 COLUM. L. REV. 613, 634 (2020) ("After the GAO notified Berryhill of her noncompliance with the [FVRA], she stepped down as 'acting Commissioner' of the SSA. She continued to perform the same role as before, but without the acting title. . . ."). On April 17, 2018, former President Trump nominated Andrew Saul to serve as Commissioner.[8]  Thereafter, the Supreme Court decided *Lucia*, which held that the Securities and Exchange Commission ALJs, who presided over federal securities law enforcement proceedings, are "Officers of the United States" within the meaning of the Appointments Clause, and therefore, had to be appointed by the President, a court of law, or the department head. 138 S. Ct. 2044, 2053-54 (2018). Following this decision, concerns arose that ALJs within the SSA were similarly subject

---

[8] *See* Nomination of Andrew M. Saul, To Be Commissioner, Social Security Administration: Hearing Before the Comm. on Fin., 115 Cong. 2 (2018); *see also* Partnership For Public Service, *The Nominees Donald Trump Tapped for Key Roles During his Term*, WASH. POST (Jan. 15, 2023 3:52 PM), https://www.washingtonpost.com/graphics/politics/trump-administration-appointee-tracker/database/.

to the Appointments Clause and, thus, had not been properly appointed by the President, a court of law, or the head of the SSA. In response to these concerns, Ms. Berryhill issued an Agency-wide ratification and reappointment of all SSA ALJs on July 16, 2018. Social Security Ruling 19-1p, *Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council*, 84 Fed. Reg. 9582-02 (Mar. 15, 2019) ("SSR 19-1"). Plaintiff argues that the ALJ in the present matter lacked authority to hear her case because Ms. Berryhill exceeded the 210-day period limiting her ability to serve as Acting Commissioner and was therefore not properly acting as such when she issued the July 16, 2018 order ratifying the appointment of the ALJ. (Pl.'s Mem. at 12-13.)

   3.  *Analysis*

   Here, there is no question that former Acting Commissioner Berryhill initially served under § 3346(a)(1) for 210 days from January 21, 2017, until November 16, 2017.[9]  However, this matter presents the following issue: if an acting official's 210-day period of service expires, and the President nominates another for the same office, does the FVRA allow the acting official to resume another period of acting service while the nomination is pending? The undersigned finds that it does for the reasons articulated below.

   As an initial matter, the Court notes that Plaintiff's counsel mirrors the argument he previously made in *Lance M. v. Kijakazi*, which this Court found to be unavailing.  No. 2:21CV628, 2022 U.S. Dist. LEXIS 135461, 2022 WL 3009122, at *11 (E.D. Va. July 13, 2022) (unpublished) ("[T]he plain language and legislative history of the FVRA confirm that Berryhill

---

[9]  November 16, 2017 is 300 days from January 21, 2017; although that is 90 days more than the 210-day period, that 90-day extension is provided in 5 U.S.C. § 3349a(b) for circumstances where a vacancy arises at the beginning of a new President's term.

could resume her service after Saul's nomination was submitted notwithstanding the fact that her original 210-day period expired before the Senate received his nomination."), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 134695, 2022 WL 3007588 (E.D. Va. July 28, 2022) (unpublished). Despite the District Court's ruling in *Lance M.* on July 28, 2022, Plaintiff's counsel proceeded to argue the same, unavailing argument in the present matter just three months later, in a nearly verbatim iteration of the arguments roundly rejected in *Lance M.* (Pl.'s Mem. at 12-13.) In doing so, Plaintiff urges this Court to set aside its previous ruling in favor of the holding reached in *Brian T.D. v. Kijakazi*, a Minnesota District Court decision that was subsequently reversed and remanded by the Eighth Circuit on March 7, 2023.[10] (Pl.'s Mem. at 13.) *See  Brian T.D. v. Kijakazi,* 580 F. Supp. 3d 615 (D. Minn. 2022) (holding that the FVRA did not allow Ms. Berryhill to resume acting as Commissioner at the time she ratified the ALJ's appointment), *rev'd sub nom. Dahle v. Kijakazi,* No. 22-1601, 2023 U.S. App. LEXIS 5367 (8th Cir. Mar. 7, 2023) (finding that Ms. Berryhill was properly serving as Acting Commissioner when she ratified the appointment).

Indeed, in *Dahle v. Kijakazi*, the Eighth Circuit found that § 3346(a)(2) "can act as a tolling provision to subsection 1" but that "it also provides an independent period of time for an individual to serve as an acting officer. The use of 'or' as a connector between subsections 1 and 2 requires the subsections be given distinct, independent meanings." 2023 U.S. App. LEXIS 5367, at *5 (citing *United States v. Woods*, 571 U.S. 31, 45, 134 S. Ct. 557, 187 L. Ed. 2d 472 (2013) (finding the use of "or" "is almost always disjunctive, that is, the words it connects are to 'be given separate

---

[10] The Eighth Circuit rendered its decision six months after Plaintiff filed her Motion for Summary Judgment and supporting memoranda in this matter. Nevertheless, *Brian T.D.* was by no means settled law at the time of Plaintiff's filings, as it was on appeal to the Eighth Circuit at the time the parties submitted their briefings.

meanings'")). The *Dahle* Court concluded that "there is simply no textual basis to imply that subsection 1 and its 210-day limit somehow restrict a person's service under subsection 2." *Id.* Accordingly, it follows that subsection 2 cannot be, exclusively, a tolling provision (as the plaintiff argued) as both the "text and legislative history [of § 3346] show the intent of the legislative branch was to allow an individual to serve noncontinuously under subsections 1 and 2." *Id.* at *9. Consequently, the Eighth Circuit held that "[Ms.] Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs." *Id.* at *10-11.

Similar to the Eighth Circuit's decision, other judges from courts within the Fourth Circuit "have considered this issue at considerable length and concluded that this appointment clause argument [under the FVRA] has no merit." *Taylor v. Kijakazi*, No. 1:21CV648, 2022 U.S. Dist. LEXIS 181591, 2022 WL 4668273, at *9 (M.D.N.C. Aug. 2, 2022) (unpublished) (Webster, M.J.) *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 178278, 2022 WL 4621418 (M.D.N.C. Sept. 30, 2022) (unpublished) (Osteen, J.). Indeed, courts within the Fourth Circuit characterize *Brian T.D.* as:

> [A]n outlier that conflicts with the plain text of the FVRA, nearly every other court to address the issue, as well as the views of the Executive Branch and the Legislative Branch - all of which agree that § 3346(a)(2) permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired.

*Williams v. Kijakazi*, No. 1:21CV141, 2022 U.S. Dist. LEXIS 106466, 2022 WL 2163008, at *3 (W.D.N.C. June 15, 2022) (unpublished); *see also Early v. Kijakazi*, No. 5:21CV96, 2022 U.S. Dist. LEXIS 101146, 2022 WL 2057467, at *4 (W.D.N.C. June 7, 2022) (unpublished) (expressly disagreeing with *Brian T.D.* and holding "[T]he plain language of 5 U.S.C. § 3346 allows for Ms. Berryhill to have resumed her role as Acting Commissioner on the date that Andrew Saul was

nominated. Consequently, she had the necessary statutory authority to ratify the appointment the ALJs in 2018 and [the p]laintiff's [] argument fails.")

On April 11, 2023, after the parties submitted their memoranda in this matter, the Fourth Circuit joined "the Eighth Circuit and the growing number of district courts that have rejected" Plaintiff's view. *Rush v. Kijakazi*, Nos. 22-1797, 22-1834, 22-1901, 2023 U.S. App. LEXIS 8590, at *20 (4th Cir. Apr. 11, 2023). In *Rush*, the plaintiff-claimants' social security disability applications were rejected by ALJs whose appointments had been ratified by Ms. Berryhill post-*Lucia*. *Id.* at *2. The plaintiff-claimants argued that Ms. Berryhill was not legally serving as Acting Commissioner when she ratified the ALJs' appointments because her period of service under 5 U.S.C. § 3346(a)(1) had expired. *Id.* at *5. However, the Fourth Circuit rejected this argument and found that:

> [T]he most natural interpretation of (a)(2) is that it authorizes an independent period of acting service while a nomination is pending regardless of whether the nomination occurred during the (a)(1) period. In line with this interpretation, (a)(2) delineates its own beginning and ending independent of (a)(1)—authorizing acting service "from the date of such nomination" until the nomination is no longer "pending in the Senate." 5 U.S.C. § 3346(a)(2). Appellants' interpretation of (a)(2) as exclusively a tolling provision subordinate to (a)(1) thus deprives (a)(2) of its independent and ordinary significance and contravenes the most natural reading of the statute's disjunctive "or".

*Id.* at *9. Accordingly, the Court held that "[a]n acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her service under § 3346(a)(1) expired before the nomination was submitted. Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments." *Id.* at *20-21.

Given the recent case law decidedly rejecting Plaintiff's arguments, the Court declines to find that the ALJ's decision in this matter was void for violating the Appointments Clause of the

United States Constitution and the FVRA. Indeed, Plaintiff's challenge must fail because the ALJ was duly appointed and ratified at the time she heard evidence on September 8, 2021, and at the time she issued her decision on September 22, 2021. Accordingly, the undersigned recommends that the Commissioner's decision should be affirmed.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record, and forward a copy to United States District Judge David J. Novak.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: July 24, 2023

25